Zobel, J.
These consolidated cases concern a construction project supervised by the plaintiff contractor, NG Brothers Construction, Inc. (“NG Brothers”), on residential land owned and occupied by certain members of the Cranney family. The pending cross-motions for partial summary judgment, filed by NG Brothers and jointly by Defendants John, Naomi, and Nevena Cranney, concern only Count III of NG Brothers’ complaint in Civil Action No. 99-4259, which alleges a perfected contractors’ lien.
Certain material facts are undisputed:
The Cranneys occupy residential property at 885 Concord Avenue (“the property”) in Belmont, Massachusetts. Naomi Crahney is John Cranney’s mother, Nevena Cranney his wife. On March 5, 1997, the Cranneys hired NG Brothers to supervise a major construction project (“the project”) on the property. Attached to their written agreement (“the contract”) was a payment schedule, listing a down payment of $50,000 and a total price of $880,000, payable in segments upon completion or approval of various work segments. The contract also incorporated an itemized proposal and drawings for other parts of the project.
NG Brothers were to act as the primary contractor, with authority to subcontract various aspects of the work (Clause 9.1):
The Contractor shall supervise and direct the work, using the Contractor’s best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures for coordinating all portions of the Work under the Contract, unless *557 Contract Documents give other specific instructions concerning these matters.
The contract set the “substantial completion” date at “6 months after the date of commencement.”
Problems developed quickly, as John Cranney had difficulty making progress payments. NG Brothers had based its proposal on design plans prepared by Gene Armstrong, an architect and friend from North Carolina. The parties’ contract had also listed certain work which had preceded NG Brothers’ appearance, for which it would not be responsible; however, in late Spring, 1997, John Cranney sought various modifications requiring change orders and delays in the initial work schedule. He also went outside the contract: (a) by hiring Robert Bross. a construction supervisor from New Jersey (licensed also in Massachusetts) to complete some of the modifications; and (b) by contracting directly with two of NG Brothers’ subcontractors, Man Young and Current Solutions.
During September and October of 1997, a dispute arose over NG’s failure to include the framing costs in the actual price. At that point, John Cranney also hired Bross as the owner’s representative, to supervise and deal with NG Brothers and (among other duties) to maintain a daily log of NG Brothers’ efforts.
In late October 1997, NG Brothers stopped work because of the framing costs dispute. On November 14, 1997, NG Brothers recorded a notice of contract against the property, see, G.L.c. 254, §2. Eventually, after John Cranney agreed to pay the additional cost of the lumber, NG Brothers resumed work on November 24, 1997. Nonetheless, on January 9, 1998, NG Brothers recorded a statement of account, see, G.L.c. 254, §8.
On January 26, 1998, the parties sought to settle some of their differences by agreeing to a partial release: John Cranney released NG Brothers from any potential claims stemming from delays in completing the project; NG Brothers executed a promissory note for $122,955.13, representing the then-current amount due NG Brothers under the original agreement. On January 29, 1999, NG Brothers filed anotice of dissolution, see, G.L.c. 254, §10.
Nonetheless, disagreements between NG Brothers and the Cranneys continued. John Cranney sought additional modifications and change orders; he often denied access or made unavailable certain equipment he wanted installed as part of the project. NG Brothers, Current Solutions, and Young all complained about these problems to John Cranney, sometimes fruitlessly. John Cranney also did not pay Young and Current Solutions for their additional work; nor has he ever paid NG Brothers on the promissory note he gave as consideration for the partial release.
On March 9, 1999, NG Brothers filed another notice of contract, and on June 3, 1999, another statement of account.
Legal argument in the briefs and at the hearing on these cross-motions centered on determining when NG Brothers had “last performed or furnished labor or material or both labor and materials,” G.L.c. 254, §§2(iii) & 8(iii). The parties agree that NG Brothers never filed a “notice of substantial completion,” G.L.c. 254, §2A; nor have the Cranneys filed a “notice of termination,” G.L.c. 254, §2B. All these provisions underlie a recent major amendment to Chapter 254, giving contractors and subcontractors greater security for materials and services furnished in construction projects, often on land owned by a third party, Acts 1996, c. 364. Retrospective application of the statute is not an issue, see, Yates v. General Motors Acceptance Corp., 356 Mass. 529, 531 (1969).
Depending on the documents recorded, different timetables may regulate enforcement of contractors’ and subcontractors’ liens, see, G.L.c. 254, §§2, 4 & 8. The new statute affords contractors like NG Brothers an alternative track for lien enforcement, depending on the date work stops, see G.L.c. 254, §§2(iii) & 8(iii).
The Cranneys now argue that NG Brothers’ own internal time records and a summary of the information in Bross’ daily work journal show that NG Brothers apparently last worked on-site July 18, 1998, and that their complaint, their second notice of contract, and their second statement of account are thus all untimely, see G.L.c. 254, §§2(iii), 8(iii) & 11.
In response, NG Brothers has submitted affidavits from Jack Ng, one of its construction supervisors; Mabel Leung, its office manager; and Young and Norman Comanchini, president of Current Solutions. Jack Ng swears that he last remembers coming by the Cranney residence some time in March 1999, when he apparently met Current Solutions’ employees at the property. Ng has also asserted that he continued to supervise the subcontractors’ work from NG Brothers’ office, with the assistance of Leung, who swears that she remembers supervising the project at least through March 10, 1999. Moreover, in their affidavits, Young and Comanchini both state they still consider themselves “on this job” because they have never received any written cancellation from the Cranneys.
NG Brothers also seeks summary judgment on its mechanics’ lien claim, arguing that it has timely filed a second notice of contract and statement of account, along with its Complaint in Civil Action No. 99-4259, calculating the appropriate periods from March 10, 1999.
The prior version of Chapter 254 was not well-suited to disputes like this one, because its timetable for lien enforcement only began on the completion date for the overall project, which a contractor had to state in the original contract or in any later-approved extensions, or a subcontractor had to estimate in the initially-recorded notice of contract, see, G.L.c. 254, §§2, 4, 8 & 11 (1988); compare Blount Brothers Corp. v. Lafayette Place Associates, 399 Mass. 632, 635-37 *558 (1987); and Baltimore Contractors, Inc. v. Dupree, 352 Mass. 83, 86 (1967), with East Coast Steel Erectors, Inc. v. Ciolfi, 417 Mass. 602, 607-08 (1994). On the other hand, G.L.c. -254, §§2(iii) and 8(iii), upon which the parties here rely, both use the date when a contractor “last performed or furnished labor or material or both labor and materials” as the benchmark for lien enforcement.
Under both versions of the statute, the procedure for enforcing a lien on real property begins with the recording of a “notice of contract” and continues with the filing of a “statement of account,” specifying the value of the materials or services provided, see, G.L.c. 254, §§2, 8. The new statute, however, streamlines the process.
First, all subcontractors and contractors can now follow similar tracks to secure and enforce liens, regardless of the materials or services provided, or the status of their contractual relationship with the relevant parties, see, G.L.c. 254, §§2, 4.
Second, and more pertinent to this case, the revisions adopt a new concept, the “notice of substantial completion,” which becomes the primary marker for the timeliness of each potential enforcement step, including the notice of contract and statement of account, see, G.L.c. 254, §§2(i), 2A, 4(i) & 8(i). The old statute relied on the idea of a definite “completion date,” to which all parties, including the landowner, would adhere; the new statute attempts to smooth the relationship between contractors and owners by demanding that one of these parties file first a “notice of substantial completion,” signed and executed by both parties, before a contractor or subcontractor may further pursue statutory lien rights, G.L.c. 254, §2A..
Finally, the new statute lengthens the time period during which a contractor or subcontractor may commence an action after filing a notice of contract and a statement of account, see G.L.c. 254, §11.
Here, NG Brothers never filed a “notice of substantial completion,” G.L.c. 254, §§2(ii), 2A & 8(ii); nor have the Cranneys filed a “notice of termination," G.L.c. 254, §§2(u), 2B & 8(ii). This latter represents another innovation added by the recent revisions, allowing a landowner to determine effectively the future timetable for any potential lien enforcement actions, and thus appropriately to budget funds covering any uncertainties, whether or not a contractor ever files a notice of substantial completion, see G.L.c. 254, §2B.
The parties have attempted to minimize the effect of certain language modifying the different statutory tracks for lien enforcement, see, G.L.c. 254, §§2 & 8. This language, however, controls the timetable for commencing an action to enforce a lien, see, G.L.c. 254, §§2, 4 & 8, 11. Thus although NG Brothers subsequently filed a “statement of account,” G.L.c. 254, §8(iii), in addition to their second “notice of contract,” G.L.c. 254, §2(iii), the possibility remains that neither of these documents nor their complaint has been timely filed, regardless of how the court resolves the various disputes presented by the cross-motions.
Before setting out the different timetables, G.L.c. 254, §§2, 4 & 8 all use the phrase “not later than the earliest of,” to signify that all of these new schedules follow only after a condition precedent, viz., the recording of the notice of substantial completion. Indeed, the statute supports this interpretation. It uses the word “shall,” thus suggesting that the initial filing of a notice of substantial completion is mandatory. In addition, this reading applies “unless the context clearly requires otherwise,” G.L.c. 254, §2A.
At this point, then, it is impossible to read the statute properly so as to accommodate the parties’ respective arguments.
Despite the statute’s remedial nature, see, Winer v. Rosen, 231 Mass. 418, 422 (1918), strict compliance with the terms of Chapter 254 has always been required, see. East Coast Steel Erectors, Inc. v. Ciolfi, supra, at 605; Blount Brothers Corp. v. Lafayette Place Associates, supra, at 639. The current law, therefore, requires that the recording of a notice of substantial completion precede the filing of a notice of contract and statement of account. Although no appellate courts have interpreted the new statute, commentators have also given it this reading, see, Berkman, Change in Mechanic's Lien Law ‘Valuable Tool’for Bar, 26 M.L.W. 627, 661 (11/24/97); Alexander, Construction-Mechanics’ Lien, Chapter 364 of the Acts of 1996, 81 Mass.L.Rev. 167, 168 (1996); see also, Eno & Hovey, Real Estate Law §11.18.1 (Supp. 1999).
For this reason, and because NG Brothers never negotiated with the Cranneys concerning a notice of substantial completion, the more recent mechanic’s lien (to which the parties have directed their cross-motions for partial summary judgment) is not subject to enforcement. Even were the court to read the facts as NG Brothers proposes, the second notice of contract and statement of account were untimely, G.L.c. 254, §§2, 8, 11. The Legislature could not have intended the newly-amended Chapter 254 to allow contractors to encumber the realty of unsatisfied clients.

ORDER

Accordingly, it is Ordered, that Plaintiff s Motion for Summary Judgment be, and the same hereby is, Denied; and it is Further Ordered, that Defendant’s Motion for Summary Judgment be, and the same hereby is, Allowed.'